J-S31009-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TYREESE SCOTT | : | |
| | : | |
| Appellant | : | No. 308 EDA 2022 |

Appeal from the PCRA Order Entered November 9, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0004603-2014

BEFORE:  OLSON, J., STABILE, J., and McLAUGHLIN, J.

MEMORANDUM BY OLSON, J.:                    **FILED OCTOBER 12, 2023**

Appellant, Tyreese Scott, appeals from the order entered on November 9, 2021, which denied him relief on his petition filed under the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546.  We affirm.

The trial court ably summarized the facts underlying Appellant's convictions:

> On February 17, 2014, at approximately 11:15 p.m., Police Officers Anthony Santulli, Brian Nolan, Sergeant Waddell, and Sergeant Jose Medina were conducting a pedestrian stop at the intersection of Tenth and Cumberland Streets in the city and county of Philadelphia, when they heard gunshots coming from the location of Thirteenth and Cambria Streets. En route to that location via a police vehicle, Officers Santulli and Nolan observed a 2004 Silver Pontiac Grand Prix ignore a stoplight and cross the intersection at Twelfth and Somerset Streets.  Co-defendant Gregory Nash drove the Pontiac, with co-defendant Vincent McClenny in the front passenger seat, and [Appellant] in the rear passenger seat.

Officers Santulli and Nolan turned left on Somerset, where they followed the Pontiac westbound and shined a spotlight into its rear windshield. As the light shone, Officer Nolan observed [Appellant] holding a silver barreled handgun, which he attempted to conceal in the light housing inside the roof of the car. Upon seeing the gun, the officers activated their lights, and a chase ensued.

[Appellant's] vehicle turned southbound towards Lehigh Avenue, where it turned eastbound towards Ninth Street, a northbound one-way street. With Officers Santulli, Nolan, Waddell, and Medina now in pursuit, the Pontiac turned southbound on Ninth Street, and traveled the wrong way before making a sudden left turn on Norris Street. There, [Appellant], Nash, and McClenny exited the vehicle and attempted to evade the police by foot. After a brief chase, Sergeant Medina apprehended [Appellant], while Officers Santulli and Nolan apprehended Nash and McClenny, respectively.

After arresting McClenny, Officer Nolan returned to the Pontiac and looked into the light housing in the rear of the vehicle, where he observed three pistols hidden inside. Detective Richard Bova, the assigned detective in this matter, received a search warrant for the Pontiac and recovered a loaded black Glock 26 40-caliber, a Ruger P-89 9[-millimeter], and a Ruger P-95 9[-millimeter] handgun, along with [13] small plastic baggies of marijuana. Officer Lawrence Flager of the Firearms Investigative Unit examined each pistol and determined that they were operable.

At trial, the Commonwealth presented a Certificate of Non-Licensure indicating that [Appellant] did not have a valid license to possess a firearm at the time of the incident, and the parties stipulated that [Appellant] had a prior enumerated felony conviction for the purposes of [18 Pa.C.S.A. § 6105 (persons not to possess firearms)].

[Appellant] elected to take the stand and testified that he owned the 2004 Pontiac Grand Prix used in the chase, that he drove the vehicle, that he knew that his co-defendants were armed, but that he did not carry a firearm that night.

Trial Court Opinion, 12/18/17, at 2-3 (citations omitted).

Following a bench trial, Appellant was found guilty of criminal conspiracy, persons not to possess firearms, carrying a firearm without a license, carrying a firearm on the public streets of Philadelphia, and possessing a small amount of marijuana.[1]  On December 12, 2016, the trial court sentenced Appellant to serve an aggregate term of six to 12 years in prison, followed by five years of probation, for his convictions.  We affirmed Appellant's judgment of sentence on November 2, 2018 and the Pennsylvania Supreme Court denied Appellant's petition for allowance of appeal on April 23, 2019.  **Commonwealth v. Scott**, 201 A.3d 812 (Pa. Super. 2018) (unpublished memorandum) at 1-12, *appeal denied*, 207 A.3d 288 (Pa. 2019).

On October 25, 2019, Appellant filed a timely, *pro se* PCRA petition.  The PCRA court appointed counsel to represent Appellant during the proceedings and counsel filed an amended petition on Appellant's behalf.  Within the amended petition, Appellant claimed that his "plea-stage counsel [(hereinafter "Plea Counsel")] was ineffective for failing to convey a plea offer prior to the commencement of trial."  **See** Amended PCRA Petition, 6/2/21, at 4.

On August 30, 2021, the PCRA court held a hearing on Appellant's claim.[2]  As the PCRA court thoroughly explained:

---

[1] 18 Pa.C.S.A. §§ 903, 6105(a)(1), 6106(a)(1), and 6108 and 35 P.S. § 780-113(a)(31), respectively.

[2] We note that Plea Counsel passed away prior to Appellant's PCRA hearing. PCRA Court Opinion, 4/6/22, at 2 n.1.

Appellant asserts in his petition that the Commonwealth offered a plea deal of [18 to 36] months' incarceration, but that due to [Plea Counsel's] inadequate representation, he could not properly evaluate the Commonwealth's offer. Appellant claimed that [Plea Counsel] incorrectly advised him by letter that he faced a mandatory minimum sentence of three [] years' incarceration, that he had a prior record score of zero [], and that the sentencing guidelines ranged from [22 to 36] months' incarceration. Appellant attached [Plea Counsel's] June 19, 2014 letter to his petition. The letter states in pertinent part as follows:

> Dear [Appellant],
>
> Please find the letter of May 29, 2014 that I sent you regarding the offer in the above case which was returned to my office. Can you also explain why you are at Graterford? My criminal record printout does not show any convictions that explain your placement there.
>
> I understand that the case is a mandatory minimum of 3 years. Secondly, the [Violation of the Uniform Firearms Act ("VUFA") § 6105 has an offense gravity score of 10, and with a prior record score of 0 (I am unaware of your juvenile record if one exists), the recommendations per the guidelines is 22-36 months incarceration, plus or minus 12 months. As you can see 18-36 months is less than what you would receive for that one charge alone and your plea would be to Conspiracy and VUFA § 6106.
>
> I have also enclosed your discovery for your review. Please return the offer form within 2 days. I will see you at the [Criminal Justice Center ("CJC")] on 6/26/14.

(See Letter dated June 19, 2014, attached to Appellant's amended PCRA Petition).

Appellant testified at his PCRA hearing that after receiving [Plea Counsel's] letter, he next spoke to her at the scheduling conference at the [CJC] on June 26, 2014. Appellant claimed he had questions for [Plea Counsel] regarding the letter, but that he met with her for only a few minutes and "she told [him] to just take or leave the deal." Appellant testified that he specifically sought to ask [Plea Counsel] about her

- 4 -

reference to the mandatory minimum sentence of 3 years' incarceration, which Appellant purportedly believed meant that the maximum sentence he could receive was 3 years' incarceration.

Appellant testified that [Plea Counsel] asked him why he was incarcerated and that he advised her he had prior convictions for aggravated assault, firearm possession, and marijuana possession. According to Appellant, after [Plea Counsel] learned of Appellant's prior record, she still did not recalculate his prior record score or recommended sentencing guidelines. Appellant testified that he rejected the Commonwealth's plea offer of [18 to 36 months'] incarceration, and opted to go to trial, because he believed the maximum sentence he could receive was 3 years' incarceration.

Appellant testified that he obtained new counsel after rejecting the Commonwealth's offer, but that he still did not learn until after trial that the sentencing guidelines ranged from 72 to 84 months' incarceration (plus or minus 12 months). Furthermore, although Appellant knew he had a criminal record as both an adult and a juvenile, he testified he was unaware that he had a prior record score higher than zero. Appellant testified that if [Plea Counsel] informed him that his prior record score and pending charges warranted a sentencing guideline of 72 to 84 months' incarceration (plus or minus 12 months), he would have accepted the Commonwealth's plea offer of 18 to 36 months' incarceration. As the remedy for [Plea Counsel's] ineffectiveness, Appellant requested the court to grant his PCRA petition, to compel the Commonwealth to "re-offer" the [previous] deal of 18 to 36 months' incarceration, and to have [the PCRA court] "do what the court would normally do when deciding whether or not to accept a negotiated plea."

In response to Appellant's argument, the Commonwealth noted that its [prior] offer was based on the Commonwealth's inaccurate calculation of the sentencing guidelines and [Appellant's] prior record score. Had the Commonwealth known at the time that Appellant's prior record score was in the "Repeat Felony 1 and Felony 2 Offender" (RFEL) category, it would not have made the lenient offer. The Assistant District Attorney, Cydney Pope, explained:

Ms. Pope: He was a 5. Technically he's a re-fel. Just in looking here, he's a re-fel. He had been charged with an aggravated assault that night, and he would have been a re-fel.

The Court: Why at that time would [an] offer for [Appellant] be [18 to 36 months], and his co-defendant was four to 10 [years], and his co-defendant's prior record score was a 2.

Ms. Pope: I will tell you that the reason why is because the Commonwealth, the DA who had the case at the time that the offer was made, and at that time, because I have the central file from the time, at that time, and I know this personally, every single offer was approved by the Chief or Assistant Chief of central at that time, and that offer was approved, and it was approved based on a prior record score that was inaccurately a zero.

By the time it came to trial and . . . pre-trial, the motion to suppress, that prior record score had been determined to be incorrect.

. . .

I don't know how it is in this case that it happened, but clearly the prior DA who had the case at the time of the [prior offer] miscalculated, and by miscalculated, when they pulled the record, this was the only open case.

[N.T. PCRA Hearing, 8/30/21, at 35-36].

Ms. Pope emphasized that the offer "was made entirely due to a mistake of the DA." In that regard, [the PCRA] court itself noted that Appellant's charge of illegally possessing a firearm under 18 Pa.C.S. § 6105 meant that "he had to have been convicted of a prior offense." Even PCRA counsel agreed that it is reasonable to conclude that the offer was erroneously extended based on Appellant's inaccurate prior record score. In counsel's words: "It's more egregious because Ms. Pope is right, the offer was, I guess, made in error. I can't answer that. Certainly she could have contacted the DA that made the offer, but I think that's a reasonable assessment."

- 6 -

PCRA Court Opinion, 4/6/22, at 2-5 (some citations and capitalization omitted).

The PCRA court denied Appellant's petition on November 9, 2021 and Appellant filed a notice of appeal on December 21, 2021.[3] Appellant raises one extant claim on appeal:

_____

[3] As noted, the PCRA court denied Appellant's petition on November 9, 2021 and Appellant filed a notice of appeal on December 21, 2021. Thus, Appellant's notice of appeal is facially untimely. *See*, *e.g.*, Pa.R.A.P. 903(a). Nevertheless, the clerk of courts failed to note, on the docket, the date upon which the November 9, 2021 order was served upon Appellant's attorney. This constitutes a breakdown in the operation of the courts and renders Appellant's December 21, 2021 notice of appeal timely. To be sure, Pennsylvania Rule of Criminal Procedure 114(B)(1) requires the clerk of courts to serve promptly a copy of any trial court order or notice on each party's attorney-of-record or the party if unrepresented. Pa.R.Crim.P. 114(B)(1). To memorialize that proper service of a trial court order or notice was provided, Rule 114(C)(2)(c) requires the clerk of courts to note, *via* a docket entry, the date of service of such trial court order or notice. Pa.R.Crim.P. 114(C)(2)(c). It is well-settled that the appeal period only begins to run on the date the clerk of courts mails or delivers a copy of the trial court order or notice to the parties. Pa.R.A.P. 108(a)(1), (d), and Note (stating, the purpose of this rule is to fix that date from which the time for appeal shall be computed); ***see also Commonwealth v. Carter***, 122 A.3d 388, 391 (Pa. Super. 2015) (stating that, the "appeal period only begins running on the date the [clerk of courts] mails or delivers copies of the orders to the parties" (original quotation marks omitted)), ***Commonwealth v. Jerman***, 762 A.2d 366, 368 (Pa. Super. 2000).

Because the PCRA court docket does not contain the entry information prescribed by Rule 114, we are unable to discern the date upon which the clerk of courts served Appellant with a copy of the November 9, 2021 dismissal order. A breakdown in the judicial system occurs if the clerk of courts fails to note on the docket the date upon which a trial court order or notice has been served upon a party. ***Jerman***, 762 A.2d at 368 (finding a breakdown in the judicial system and deeming the appeal timely when the clerk of courts failed to serve a copy of an order on the party). As a result of this breakdown, the

*(Footnote Continued Next Page)*

[1.] Did the PCRA court err in dismissing the PCRA petition as [Plea Counsel] was ineffective for failing to accurately and effectively advise [Appellant] and participate in meaningful pre-trial negotiations with the Commonwealth, there was no reasonable basis for this failure and but-for this failure, there is a reasonable probability that after meaningful and effective negotiations with the Commonwealth there would have been an offer made that [Appellant] would have taken.

[Plea Counsel] ill-advised [Appellant] based on inaccurate prior record score and guideline range and a non-existent mandatory minimum, which made [Appellant] unaware of his true sentencing exposure and he was therefore unable to intelligently evaluate any offer. The PCRA court erred in ruling [Appellant] was not prejudiced, as [Appellant] rejected an offer he would have otherwise accepted, was subsequently convicted and sentenced to a substantial state sentence, and due to ineffective [Plea Counsel], any meaningful pre-trial negotiations were frustrated and denied. Due to this ineffectiveness [Appellant] was never afforded the opportunity of any true offer based on accurate prior record score?

Appellant's Brief at 5-6.[4]

"We review a ruling by the PCRA court to determine whether it is supported by the record and is free of legal error. Our standard of review of a PCRA court's legal conclusions is *de novo*." **Commonwealth v. Cousar**, 154 A.3d 287, 296 (Pa. 2017) (citations omitted). However, we afford "great deference" to the PCRA court's credibility determinations. **Commonwealth**

_____

period in which Appellant may file a notice of appeal has not begun to run. Therefore, we deem Appellant's notice of appeal to be timely filed on December 21, 2021.

[4] On appeal, Appellant also raises a claim concerning the timeliness of his notice of appeal. **See** Appellant's Brief at 5. Since we have already concluded that Appellant filed a timely notice of appeal, we will not restate this issue.

***v. Flor***, 259 A.3d 891, 910-911 (Pa. 2021).  As our Supreme Court has explained:

> We will not disturb the findings of the PCRA court if they are supported by the record, even where the record could support a contrary holding.  [An appellate court's] scope of review is limited to the findings of the PCRA court and the evidence on the record of the PCRA court's hearing, viewed in the light most favorable to the prevailing party.

***Id.*** (quotation marks and citations omitted).

To be eligible for relief under the PCRA, the petitioner must plead and prove by a preponderance of the evidence that his conviction or sentence resulted from "one or more" of the seven, specifically enumerated circumstances listed in 42 Pa.C.S.A. § 9543(a)(2).  One of these statutorily enumerated circumstances is the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place."  42 Pa.C.S.A. § 9543(a)(2)(ii).

Counsel is presumed to be effective and "the burden of demonstrating ineffectiveness rests on [A]ppellant."  ***Commonwealth v. Rivera***, 10 A.3d 1276, 1279 (Pa. Super. 2010).  To satisfy this burden, Appellant must plead and prove by a preponderance of the evidence that:

> (1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and, (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the challenged proceedings would have been different.

*Commonwealth v. Fulton*, 830 A.2d 567, 572 (Pa. 2003). As this Court has

explained:

> A claim has arguable merit where the factual averments, if accurate, could establish cause for relief. ***See Commonwealth v. Jones***, 876 A.2d 380, 385 (Pa. 2005) ("if a petitioner raises allegations, which, even if accepted as true, do not establish the underlying claim . . . , he or she will have failed to establish the arguable merit prong related to the claim"). Whether the facts rise to the level of arguable merit is a legal determination.
>
> The test for deciding whether counsel had a reasonable basis for his action or inaction is whether no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success. Counsel's decisions will be considered reasonable if they effectuated his client's interests. We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken.
>
> Prejudice is established if there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Commonwealth v. Stewart*, 84 A.3d 701, 707 (Pa. Super. 2013) (some

quotations and citations omitted). "A failure to satisfy any prong of the test

for ineffectiveness will require rejection of the claim." ***Id.***

On appeal, Appellant claims that Plea Counsel was ineffective for failing

to "properly advise [Appellant] of the correct guideline range and the actual

substantial [sentencing] exposure [Appellant] faced." Appellant's Brief at 25.

According to Appellant, Plea Counsel's improper advice caused him to reject

the Commonwealth's offer of 18 to 36 months in prison – and, eventually,

caused him to be sentenced to serve an aggregate term of six to 12 years in prison, followed by five years of probation, for his convictions. *See id.* at 25-29. As a remedy for counsel's allegedly deficient performance, Appellant requests that we "allow [him] to accept the Commonwealth's original offer of 18 months to 36 months of incarceration." *Id.* at 30. This claim fails.

As we have explained:

> a post-conviction petitioner seeking relief on the basis that ineffective assistance of counsel caused him or her to reject a guilty plea must demonstrate [that] . . . [but] for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Commonwealth v. Steckley*, 128 A.3d 826, 832 (Pa. Super. 2015) (*quoting Lafler v. Cooper*, 566 U.S. 156 (2012)); *see also Commonwealth v. Hudson*, 820 A.2d 720, 727-728 (Pa. Super. 2003) ("The Pennsylvania Rules of Criminal Procedure grant the trial court broad discretion in the acceptance and rejection of plea agreements. There is no absolute right to have a guilty plea accepted") (quotation marks and citations omitted); *Commonwealth v. White*, 787 A.2d 1088, 1091 (Pa. Super. 2001) ("[w]hile the Commonwealth and a criminal defendant are free to enter into an arrangement that the parties deem fitting, the terms of a plea agreement are not binding upon the [trial]

court. Rather the court may reject those terms if the court believes the terms do not serve justice").

The PCRA court judge in this case was also Appellant's trial court judge. And, as the PCRA court explained, Appellant cannot establish that he was prejudiced by Plea Counsel's alleged ineffectiveness because, even if Appellant agreed to the Commonwealth's offer of 18 to 36 months, the trial court would not have accepted the agreement, as the agreement was based upon an incorrect prior record score. The PCRA court explained:

> Here, the record reflects that Appellant's now-deceased [Plea Counsel] initially relayed the Commonwealth's plea offer to Appellant in a letter dated June 19, 2014. The offer was based on the Commonwealth's mistaken belief that Appellant had a prior record score of zero and faced a guideline sentence of 22 to 36 months' incarceration (plus or minus 12 months), when in fact he was a RFEL with numerous prior offenses and faced a guideline sentence of 72 to 84 months' incarceration (plus or minus 12). Since Appellant's charges included illegally possessing a firearm under 18 Pa.C.S. § 6105 — *i.e.*, an offense that requires Appellant to already have a criminal record — it should have been obvious to both the Commonwealth and defense counsel that something was amiss. The incongruity would have been more obvious at the scheduling conference on June 26, 2014, when Appellant advised [Plea Counsel] that he was currently incarcerated for prior offenses of aggravated assault, firearm possession, and marijuana possession.
>
> . . . Given the record in this case, it is implausible to conclude that both the Commonwealth and the [trial] court would have failed to recognize that the lenient plea offer was predicated on Appellant's inaccurate prior record score of zero. Rather, it is highly probable that if there had there been a guilty plea hearing, the Commonwealth and the [trial] court (and defense counsel) would have known — by that time — that the offer was premised on an erroneous prior record score. The Commonwealth and [the trial] court (and defense

- 12 -

counsel) would have known that Appellant had a violent criminal record that elevated his prior record score to the category of a RFEL. Consequently, the parties would have known that the plea offer was based on inaccurate information that was integral to formulating the deal.

Ultimately the plea offer was never "entered of record or accepted by [the trial] court." **Commonwealth v. McElroy**, 665 A.2d 813, 817 (Pa. Super. 1995). Appellant therefore was "not entitled to receive the benefit of what [was], at most, an executory bargain," and [the trial] court either would have refused to approve the deal because the offer was tendered based on inaccurate information, or it would have allowed the Commonwealth to rescind its offer. **Id.** ("A district attorney may decide, as a function of her/his prosecutorial discretion, that a plea bargain agreement not yet entered of record and approved by the court is not in the best interests and/or for the general welfare of the citizens of this Commonwealth. In that case, it makes little sense, and, indeed, it would violate the trust imposed in that office, to abdicate or to force abdication of prosecutorial discretion to a criminal defendant whose interests are adverse to those of the general citizenry of this Commonwealth."). In either situation, [the trial] court does not believe it would serve justice to approve/enforce a plea deal that was offered based on inaccurate information that was central to devising the terms of the agreement.

Although Appellant plausibly establishe[d] that [Plea Counsel] failed to competently advise him when she presented the Commonwealth's plea offer, it is highly improbable that [the trial] court would ultimately have approved the offer. Therefore, Appellant failed to establish prejudice from his now-deceased counsel's allegedly deficient performance.

PCRA Court Opinion, 4/6/22, at 9-11 (some citations and capitalization omitted).

Here, the PCRA court found, as a fact, that, even if Appellant agreed to the Commonwealth's offer of 18 to 36 months, the trial court would not have

accepted the agreement, as the agreement was based upon an incorrect prior record score. The PCRA court's factual findings are supported by the record and, thus, are binding on this Court. *Flor*, 259 A.3d at 910-911. Therefore, Appellant's claim on appeal fails, as he failed to prove that, "[but] for the ineffective advice of counsel[,] there [was] a reasonable probability that . . . the court would have accepted [the] terms" of the plea. *Steckley*, 128 A.3d at 832 (quotation marks and citations omitted).

Order affirmed. Jurisdiction relinquished.


Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 10/12/2023